In re Special Guardianship of RONALD HANS
TEDROW, ELKI EVELYN TEDROW, CHARLENE
ANN TEDROW, DARLENE NELLIE TEDROW, and STEVEN
TEDROW, Minors

WILLIAM REARDON, Special Guardian, Petitioner

High Court of American Samoa
Trial Division

PR No. 22-87

March 11, 1988

Before REES, Chief Justice, TUIAFONO, Associate Judge, and VAIVAO, Associate Judge.

Counsel: Petitioner William Reardon pro se

On Motion for Reconsideration:

### I. Facts and Procedural History

This guardianship arose out of Civil Action No. 59-83, Te'o v. Continental Insurance Co. The facts leading up to the petition of attorney William Reardon to be appointed guardian for the Tedrow children are set out in Te'o v. Continental Insurance Co., CA No. 59-83, 6 A.S.R.2d 135 (Opinion and Order on Motion to Invalidate Deed, issued December 18, 1987) [hereinafter cited as December 18 Order].

In Te'o the Court held:

(1) that an attempted conveyance to the Tedrow children of a tract of land upon which the Tedrow family home had been built was an invalid attempt to defeat the rights of Mrs. Tedrow's creditors;

(2) that Mrs. Tedrow, who had contracted for the purchase of the land and in whose name the payments had been made until some time after the judgment against her, had remained the equitable owner of the land and all the improvements on it and had retained the sole right to receive legal title to the land and its improvements as soon as the payments were completed;

(3) that the proceeds of a subsequent sale of the land and its improvements --- which had been

74

transacted by petitioner Reardon as "attorney in fact" for Mr. Tedrow, as guardian for the Tedrow children, and with the express consent of Mrs. Tedrow whom attorney Reardon has represented in the post-judgment stages of the Te'o case --- were the property of Mrs. Tedrow and were therefore subject to seizure by her creditors; but

(4) that since the money for the purchase of the land and the construction of the house seems to have come from Mr. Tedrow (apparently the sole breadwinner of the Tedrow family) and since Mrs. Tedrow's creditors had invoked the Court's equitable powers, the creditors would be allowed to seize only half of the proceeds despite Mrs. Tedrow's legal title to the whole.

Mr. Reardon [hereinafter referred to as "the petitioner"] had sold the land and the house for a total of $65,000 with the approval of the Court. The Court's approval was given subject to the condition that the entire proceeds be held in trust and not removed from the Territory until the Court had resolved the dispute in the Te'o case over the ownership of any such proceeds.[1] When the Court reached its decision on this question, it ordered that plaintiffs in Te'o (Mrs. Tedrow's creditors) receive $32,500 of the proceeds and that the other $32,500 be retained by Mr. and Mrs. Tedrow. Anticipating appeals by both sides, however, the Court further ordered that the entire $65,000 be deposited in the registry of the Court pending further proceedings. December 18 Order, supra. A companion order was issued in this guardianship action.

On January 11, 1988, the Court heard a series of motions made by the present petitioner in response to the December 18 orders. In CA No. 59-83 --- appearing in his capacity as attorney for Mrs. Tedrow and also for Mr. Tedrow, who was "appear[ing] specially to assert his and his

---

[1] See CA No. 59-83 (Order issued September 3, 1987; Reporter's Transcript of Proceedings, September 10, 1987, at 3-6). See also the "Order for Appointment of Special Guardian To Sell Real Estate of Minors" in this case, signed on October 2, 1987, and the handwritten note at the conclusion of the order.

family's rights," which was said to be "necessary because this court has issued orders jeopardizing the families property without due process of law"[2] --- the petitioner moved for a reconsideration of that part of the Court's order that had awarded $32,500 to the plaintiffs, and in the alternative for a stay of execution. In this guardianship action --- appearing in his capacities as special guardian for the children and "attorney in fact" for Mr. Tedrow --- he moved "to release the funds

---

[2] Defendants' Memorandum in Support of Motions, CA 59-83, filed December 28, 1987, at 4. The Court had previously asserted jurisdiction over any proceeds of the sale on the basis of evidence before it establishing a prima facie case that the real estate being sold was the property of Mrs. Tedrow, the defendant in Te'o. See CA 59-83, Reporter's Transcript of Proceedings, September 10, 1987, at 4. If any doubt remained about the Court's jurisdiction to issue orders with regard to the disposition of these proceeds that bind Mr. Tedrow as well as the other interested parties, Mr. Tedrow's expansion of his "special appearance" in Te'o beyond jurisdictional arguments to assert arguments on the merits would resolve it. T.C.R.C.P. Rule 12 is patterned on the corresponding federal rule, which effectively abolishes the distinction between special and general appearances by requiring that jurisdictional defenses and defenses on the merits be contained in the same pleading. Mr. Tedrow, however, appeared in Te'o not because he was named as a defendant but because he wished the Court to recognize his claim to ownership of the house and of the resulting proceeds. Even under Rule 12 such an appearance constitutes consent to the Court's jurisdiction irrespective of whether it is styled "special." R. Clinton Construction Co. v. Bryant & Reaves, Inc., 442 F. Supp. 838 (N.D. Miss. 1977). In any event petitioner's appearance in this case pursuant to his status as "attorney in fact" for Mr. Tedrow, seeking affirmative relief from the Court with regard to these proceeds, would afford an independent ground of jurisdiction over the proceeds even if they did belong to Mr. Tedrow.

which were deposited in the court registry pursuant to the court order of December 18, 1987."

In CA No. 59-83 the Court denied the motion for reconsideration but granted the motion for a stay of execution pending appeal. In this guardianship action (PR No. 22-87) the petitioner's "motion to release funds" was denied with respect to the $32,500 that had been awarded to the Te'o plaintiffs. The Court noted, however, that the Te'o plaintiffs had waived their right to appeal that part of the judgment that reserved the other $32,500 for the petitioner's clients. With respect to this money the Court therefore granted the petitioner's motion. The money was ordered to be released by the Clerk to the petitioner on condition that it be placed in trust for the Tedrow children. Reporter's Transcript of Proceedings held on Jan. 11, 1988, at 2-3.

A few days later the petitioner made a further motion to the effect that the Court approve the deposit of $20,000 of the money that had been awarded to him into trust accounts for the Tedrow children. The motion went on to "inform" the Court that the remaining $12,500 would be deposited into Mr. Tedrow's bank account. On January 22 the Court responded to this motion by instructing the petitioner to hold the whole $32,500 in trust for the children pending his appeal of the judgment in Te'o. The Court observed that the Tedrows' and the petitioner's contention in Te'o is that the land was validly conveyed to the children, and that if the appellate court were to accept this contention it might well conclude that the land and all its improvements (and therefore the entire proceeds of the sale, not just $20,000) belonged to the children.

The petitioner now moves for reconsideration of our January 11 order insofar as we refused to return the entire $65,000 to the Tedrows. He also moves for reconsideration of our January 22 order requiring that all of the $32,500 that was released to him should be held in trust for the Tedrow children pending appeal.

## II. The January 11 Order

The motion for reconsideration of the January 11 order states three grounds, all of which boil down to the contention that the Court acted

77

illegally on December 18 when it directed the petitioner to deposit the $65,000 into the registry of the Court.[3] Such orders, however, are not only not illegal but are the standard procedure whenever a judgment creditor attempts to seize property allegedly belonging to his judgment debtor. Once the Court has determined that the property does belong to the judgment debtor, it is held by the Court --- not by the debtor and not by the creditor and not by the person previously in possession--- pending a determination of the creditor's right to seize it. See, e.g., A.S.C.A. § 43.0907 (attachment); A.S.C.A. § 43.1524 (execution); A.S.C.A. § 43.1811 (garnishment). That plaintiffs in Te'o proceeded by "motion for order in aid of judgment" and a "motion to invalidate warranty deed" and did not also seek writs of garnishment or execution may have been sloppy pleading, as the Court suggested several times during these proceedings; but it is not the stuff of which due process and other unnamed civil rights violations are made. Here both Mr. and Mrs. Tedrow had not only had an opportunity to be heard, they had actually been heard at some length prior to December 18 on the only question --- whether the funds did or did not belong to the judgment debtor --- on which they may have had a right to be heard.[4]

---

[3] The three grounds, reproduced in their entirety, are (1) "[t]he taking of the funds on December 18, 1987 violated due process of law"; (2) "[t]here was not sufficient facts to warrant a taking without notice and opportunity to be heard at anytime"; and (3) "the civil rights of Petitioner and the real parties in interest were violated by the Court's action in C.A. 59-83."

[4] See, e.g., Defendants' Memorandum in Opposition to Motion to Invalidate Warranty Deed and Prohibit Transaction of Land Without Court Approval, CA 59-83; Special Appearance By Donald Tedrow, CA 59-83; Petition for Appointment of Special Guardian to Convey Real Estate (filed in this case by the petitioner as "attorney in fact" for Mr. Tedrow); Reporter's Partial Transcript of Proceedings Held 11/04/87 in CA 59-83 and PR 22-87.

Once the Court had decided that the $65,000 did in fact belong to Mrs. Tedrow, it ordered the money deposited into the registry of the Court pending further proceedings about its ultimate disposition, just as would have happened in any other proceeding for post-judgment seizure. December 18 Order, CA 59-83; Order, PR 22-87, dated December 18, 1987. Any "taking" in such cases is, of course, only temporary; a permanent taking will occur if and only if it is determined after further judicial proceedings (i.e., even more due process) that the person who possessed the money prior to its deposit in the registry of the Court had no right to it. Indeed, in this case half of the money was returned to the petitioner as soon as the Te'o plaintiffs waived their right to appeal. The other half will also be returned if and when an appellate court should reverse this court's judgment that the Te'o plaintiffs are entitled to it.

The real gravamen of petitioner's "due process" contention, as he elaborated it in the hearing on this motion, was that the Court may have injured his reputation by requiring the money to be deposited in the registry of the Court rather than retained in his trust account. "What you said, essentially, [was that] Mr. Tedrow and I couldn't be trusted." Reporter's Transcript of Proceedings Held 2/4/88 at 4-5. Injuries to reputation are not generally cognizable as due process violations. Paul v. Davis, 424 U.S. 693 (1976). In any case, the inference drawn by the petitioner would only be justified if an order that funds be deposited in the registry of the Court were an extraordinary measure taken only against untrustworthy people. On the contrary, most lawyers and most parties are trustworthy and yet funds identified as belonging to judgment debtors are routinely placed in the registry of the Court pending post-judgment execution proceedings. See the discussion at pages 77-78, supra.

Finally, however, the history of these proceedings prior to December 18 --- the conveyance to the children, the "special appearance" by Mr. Tedrow to assert what turned out to be arguments not only about jurisdiction but also on the merits, and the employment of an attorney at law as an "attorney in fact" as a device by which the real party in interest could seek affirmative judicial relief while ostensibly remaining outside the

79

Court's jurisdiction --- did give the Court reason to believe that Mr. Tedrow was actively interested in getting these funds out of the Territory whether or not the Court so ordered. The Court could not be absolutely certain that a lawyer zealously representing such a client would be unable to discern some arguable loophole, exception, vagueness, or ambiguity in its earlier orders, or some jurisdictional or other ground on which the client might be arguably within his rights in disregarding these orders. Similarly, the Court was reasonably certain but not absolutely certain that petitioner's statement that "none of the money will leave <u>until the decision</u>" (CA 59-83, Reporter's Transcript of Proceedings September 10, 1987, at 6, emphasis added) meant until the ultimate outcome of the proceedings and not just until the trial court's initial decision. Far from implying that petitioner is unethical, the Court was seeking to avoid a situation in which he might feel that his ethical obligation to represent his client zealously within the limits of the law required him to do something contrary to what the Court regarded as the meaning of its lawful orders.

The petitioner also takes strong exception to the use of the word "collusion" in the Court's December 18 order. This word, however, was used not with respect to any action petitioner did take but with respect to an action --- co-operation in an effort to remove assets from the Territory--- that he did not take. December 18 Order, slip opinion at 8.

### III. The January 22 Order

In urging reconsideration of our January 22 order the petitioner (appearing as guardian of the children and also as "attorney in fact" for Mr. Tedrow) reiterates his objections to the January 11 order. He also argues that the Court has already approved the way in which he proposes to divide the proceeds: $20,000 to the children as the owners of the land, and $45,000 to Mr. Tedrow on the theory that he paid for the house that was built on the land and therefore owns it. For the Court to require that $32,500 be held in trust for the children pending an appellate decision that might result in a determination that it belongs to them, therefore, is said to constitute yet another violation of due process. The petitioner also contends that this order renders the sale of the

80

house and land null and void, since Mr. Tedrow only approved the sale on the understanding that he would personally receive $45,000 of the proceeds.

The Court did sign, on October 2, 1987, an order drafted by the petitioner. One phrase in that order ("and deposit the sum of $20,000 to an interest bearing account in the name of the minors") might be construed outside its context as an approval of the proposed allocation of the property among Mr. Tedrow and the children. In fact, however, the Court signed the order only to formalize its earlier verbal approval of the petitioner's request that he be permitted to proceed with the sale and hold the proceeds subject to the Court's future orders on their disposition. The grounds for this request were that he had located a willing buyer for the house and that difficulties of communication with Mr. Tedrow made it impractical to delay the sale pending the resolution of the ongoing Te'o controversy. The question of how to divide the proceeds never came up. See CA 59-83, Reporter's Transcript of Proceedings September 10, 1987, at 5-6. The Court had never heard arguments in support of the novel proposition --- that land and the structures erected on it can be owned by different people in the absence of a separation agreement --- which the Court is now supposed to have implicitly and finally approved when it signed the order.

Nor had the Court been presented with facts even arguably sufficient to support the relative valuation assigned to the house and the land by the petitioner. The sole evidence presented was Mr. Tedrow's affidavit to the effect that the land originally cost $17,077. In order to address the question whether the proposed allocation of $45,000 to Mr. Tedrow as "owner of the house" and only $20,000 to the children as "owners of the land" was sufficiently fair to the children to merit Court approval, the Court would have had to know at the very least how much Mr. Tedrow had spent on materials and labor for the house. The Court did not demand any such evidence because it never for a moment considered reaching the question whether $20,000 would be a fair award to the children if the conveyance to them was valid and if, contrary to settled law and to the express terms of the land

81

sale contract, they thereby acquired the land but not the structures built upon it.[5]

---

[5] Justices of the High Court have routinely refused to approve proposed divisions of property among minors and their guardians without clear and convincing evidence that the proposed divisions are fair to the minors. If the Court had reached the merits of the proposed allocation of the proceeds among Mr. Tedrow and his children it would have required a showing similar to that required in Logoa'i v. South Pacific Island Airways, Inc., CA No. 108-84, 6 A.S.R.2d 28 (1987), in which a proposed wrongful death settlement gave $187,000 to decedent's estate and widow and only $39,000 to decedent's children. The widow, who was also the children's guardian, and her attorneys were required either to show that the children's share was proportionate to what it would probably have been if the case had been litigated or to revise the settlement to give twice as much to the children. In cases such as this one and Logoa'i the adult parties have almost always retained a single attorney to represent themselves and their children. The convenience and financial saving represented by such an arrangement will ordinarily justify it notwithstanding the potential for conflict of interest. However, "[t]he duty to be zealous in the protection of the interests of those to whom one owes a fiduciary duty is at its highest in situations wherein these interests may compete with the personal interests of the fiduciary." Logoa'i, supra, 6 A.S.R.2d at 29.

In the beginning stages of the controversy concerning the Tedrows' house, the potential for conflict among the arguable rights and interests of various family members must have seemed slight. In the present posture of the case this is no longer true. If petitioner wishes to press the argument that Mr. Tedrow was the sole owner of the house, he will of course wish to consider carefully whether separate counsel should be retained to press the children's competing claim that the conveyance of the land to them also conveyed the ownership of any structures theretofore or thereafter built on the land.

82

Instead, the Court signed the order on the explicit condition (set out in a handwritten appendix to the petitioner's draft order) that "the removal from the Territory of any funds received in connection with the land _or the house_ is enjoined pending further proceedings." PR No. 22-87, Order dated October 2, 1987 (emphasis in the original). If this was insufficient to deter the petitioner and Mr. Tedrow from relying on any implication in the language of the draft order that the Court was holding the children entitled at most to $20,000, the Court's remarks at the next hearing certainly eliminated any arguable ground for such reliance. At this hearing (held prior to the completion of the sale) the petitioner asserted for the first time in open court his position that "Mr. Tedrow's house" should be considered a piece of property separate from the land. The Court rejected this assertion, the petitioner repeated it, and the Court rejected it again at some length. Reporter's Partial Transcript of Proceedings Held 11/04/87 at 10-11. The petitioner and the Tedrows nevertheless went ahead with the sale.

As it happens, the judges signing the present opinion agree with Mr. Tedrow that he is entitled to the $12,500 he seeks. Indeed, we have already held that he is entitled to $32,500. Our order on January 22 that the petitioner retain the money in trust for the children pending appeal was an interim order whose sole purpose was to preserve the power of the appellate court to decide to whom the money belongs. If an appellate court should affirm our holding that the conveyance to the children was invalid, or if the petitioner should choose not to appeal that holding, Mr. Tedrow will immediately be entitled to receive the $32,500. If the appellate court should accept the petitioner's contention that the conveyance to the children was valid, it may go on to consider the question whether Mr. Tedrow is nevertheless the owner of the house and, if so, to assess the relative valuation of the house and the land; or it may remand these questions to the trial court, which has not yet had occasion to reach them. In either case it would seem distinctly possible that the children will be held entitled to the entire $65,000. If Mr. Tedrow wishes to obtain immediate possession of the $12,500 to which he believes himself entitled he may do so by posting a bond or by proposing to the Court some other way to guarantee that it will be

83

returned if he should be held not to own it. Otherwise the petitioner should retain the money in trust pending further proceedings.

The motions are denied.